(C. D. 1523)

PHILIPP BROS., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided May 5, 1953)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This case involves the dutiable weight of an importation of lead ingots, marked "Trepca." Duty was assessed upon an importation of 39,302 ingots out of the invoiced quantity of 39,331 ingots, an allowance being made for 29 ingots manifested but not found. The weight, as returned by the weigher, was 3,479,118 pounds. The lead content was found to be 99.8 per centum. Upon such basis duty was assessed at the rate of $1\frac{1}{16}$ cents per pound under the provisions of paragraph 392 of the Tariff Act of 1930, as modified by the Mexican Trade Agreement, T. D. 50797. The plaintiff concedes that the percentage of lead content used by the collector and the classification of the merchandise is correct.

In order to establish that duty was assessed upon the basis of too great a quantity, the plaintiff called six witnesses. The United States weigher testified for the Government.

George Sheary, supervisor of barges, employed by the Eastern Navigation Corp., testified that his employers were in the lighterage business and that he supervised the loading and unloading of boats. As to the transfer of the lead ingots in question, the witness testified substantially as follows:

The ingots were loaded upon barges right from the importing vessel. There were about 500 tons to each boat. One boat carried 13,752 ingots, another 12,429 ingots, and a third 13,222 ingots, a total of 39,403 ingots. A Government representative and a representative of the steamship company were present at the time of such unloading, and the witness personally counted the ingots as they were placed on the barges, giving a receipt therefor to the delivery clerk. The ingots were delivered to the National Lead Co. dock in Perth Amboy. The unloading started on December 22 and was completed on December 29, 1949.

William S. Loud, superintendent of the white lead division of the National Lead Co., testified that he received the lead ingots in question and shipped two carloads thereof to its smelting department, one of the cars going to the mixed metals division. Each of the carloads contained 1,160 ingots. The witness further testified that the plaintiff billed the National Lead Co. for 3,509,120 pounds of lead ingots, and he protested to the metals purchasing department that the actual weight of said ingots was less than the billed weight. Thereupon, the firm of Ledoux & Co. was employed to weigh the ingots, not including, however, the 2,320 ingots which had been sent to the smelting department, the total number of ingots weighed by the public weigher being 37,083.

Martin S. Turk, Jr., receiving clerk in the smelting department of the National Lead Co., located in Perth Amboy, testified he was experienced for 19 years as a weigher of lead ingots. He acknowledged receiving 1,160 ingots, shipped by the previous witness, and weighing same, 100 ingots at a time on a 10-ton Fairbanks scale, which was inspected by a Fairbanks man once a month, and which he checked every day. In testing the scale, the witness stated that he used a test weight every morning before putting the scale to use and that the Fairbanks people had performed their monthly inspection a week before the weighing of the ingots. The witness testified further that he kept a record of the weights he had obtained. A photostat of a receiving copy of such weights, which he had turned over to the office, was marked in evidence as exhibit 1. This record, exhibit 1, showed that 600 ingots weighed 52,027 pounds, 210 ingots weighed 18,044 pounds, and 350 ingots weighed 30,256 pounds, a total of 1,160 ingots, weighing 100,327 pounds. The so-called advised weight, that is, according to the witness, the billed weight upon those 1,160 ingots, was 103,306 pounds, as shown upon a transfer order. Such transfer order, together with a receiving slip showing 100,327 pounds received, was admitted in evidence as collective exhibit 2.

Joseph F. Fisher, general foreman of the mixed metals department of the National Lead Co., testified that he also received 1,160 ingots

from Mr. Loud's department and weighed most of them himself, the remainder being weighed by men under his supervision. According to the witness, the weighing was accomplished·upon a 5-ton Fairbanks beam floor scale, inspected once a month by the Fairbanks people, and personally tested by the. witness on the morning of the day that the weighing started. He made records of the weights he found and added up all of the different figures himself, reporting his findings to the ˙office. However, he destroyed the records that he personally had made and was unable to state from memory whether or not the total of 100,143 pounds, appearing upon the office copy of the transfer order for the 1,160 ingots, was the same total weight he reported or not.

A copy of the said transfer order offered in evidence as an exhibit in the case was objected to by Government counsel as not the best evidence, and although said transfer order was, in fact, an entry made in the ordinary course of business of the National Lead Co., the objection of Government counsel was sustained by the court. The paper in question, however, was allowed by the court to be marked as exhibit 3 for identification.

Henry Schubert, for 24 years a sampler and weigher representative of Ledoux & Co., sampler, weigher, and assayer, testified that he was experienced in weighing metals and ores. He weighed a quantity of lead ingots at the Perth Amboy plant of the National Lead Co. from January 25 to February 3, 1950, on a Fairbanks 5-ton floor scale, which was tested every morning and afternoon by him by means of a test weight. As far as he could determine, the scale was very sensitive and accurate. He testified that the ingots in question were marked Trepca, and he weighed 37,083 ingots, 50 at a time, recording the weight at each·weighing, the total of which was 3,205,441 pounds. The memorandum of the witness covering several sheets showed the various weights he obtained for each of the 50-ingot lots and also a recapitulation of the total weights upon each sheet. The memorandum was admitted in evidence as collective exhibit 4.

It was agreed between counsel that the weights of the two lots of 1,160 ingots, be stricken from said collective exhibit 4, inasmuch as such ingots had not been weighed by the representative of Ledoux & Co.

Norbert Strauss, assistant import traffic manager of plaintiff, testified that he sold 39,436 pieces of lead to the National Lead Co. out of the shipment arriving in December 1949 on the S. S. *Executor*; that they were sold under the name of Trepca upon the basis of the total weight; that the ingots were invoiced to the National Lead Co. before the arrival of the steamer upon a weight of 3,512,059 pounds; and that the ingots were covered by two customs entries, one being for 105 pieces.

The witness further testified that, after delivery, the National Lead Co. advised that its check of weight did not agree. It was then agreed between the parties to have Ledoux & Co., public weigher, weigh the ingots and check the complete weights to determine the exact weight of the shipment.

The witness further testified that the lead ingots in question were not in containers of any kind and that said ingots never take on or lose weight over any period of time; that the ingots were reasonably uniform in size; and that Trepca lead will have "a variance of around 5 pounds, with one or two pounds more or less."

According to this witness, two entries covered 39,436, one entry containing 39,331 ingots and the other 105 ingots, but that it turned out that there were only 39,403 ingots imported.

Counsel for both parties entered into the following stipulation:

MR. QUALEY: At this time I would like to enter into a stipulation with Government counsel that Entry No. 759,607 of December 19, 1949, in the name of Philipp Brothers, Incorporated, covered a total of 105 ingots of lead, marked Trepca brand; that the weight of 105 ingots was 9,290 pounds; that the percentage of lead contained was 99.7 percent; that the duty was assessed at $1\frac{1}{16}$ cents per pound under Paragraph 392 of the Tariff Act of 1930, as amended by T. D. 507,870 [sic], a weight of 9,262 pounds of lead, and that the entry was liquidated on September 5, 1950.

MR. VITALE: The Government has verified these figures from the Customs House, if your Honor please, and we will so agree, and I ask Mr. Qualey to agree that no protest was filed with respect to that entry, that is entry 759,607, liquidated September 5, 1950.

MR. QUALEY: I so agree.

Thomas G. Fitzpatrick, inspector of customs, testified for the Government that he was assigned to weigh the shipment of lead in question; that he used a 640-beam scale, having no springs, which he tested for accuracy before weighing the ingots; that it was a movable beam scale which cannot become out of adjustment, and, because of its construction, it is immaterial whether or not the floor is level; that the scale is inspected periodically by a man in charge of scales in the customhouse.

The witness further testified that the ingots were weighed by him in drafts of 5, and he took 20 drafts, a total of 100 ingots. According to the witness, the 20 drafts covered the weights ascertained for 24,895 ingots, that portion of the Trepca brand on the first invoice on permit 759608. The witness also had on the same permit a second invoice covering 14,436 ingots of Trepca brand, of which he also weighed 100 ingots. He testified that he found the total weight of the 100 ingots covered by the first invoice to be 8,853 pounds, which would make an average of 88.53 pounds per ingot; and that the total weight of 100 ingots on the second invoice was 8,851 pounds, an average of 88.51 pounds per ingot. In addition to the above, the

witness further testified that the two public store ingots were also weighed. One from the first invoice weighed 79 pounds, and one from the second invoice weighed 88 pounds.

The witness further testified that in weighing the ingots he followed the standard procedure prescribed by the regulations, stating as follows:

Packages or anything of uniform size or shape, that appear to be uniform, are testable by the Government. In all cases we try to get 100 percent weight but to facilitate and expedite cargo from the pier in cases like this, why, we use a test.

The witness considered that the test weights ascertained were adequate for the computation of the total weight and therefrom computed that 24,895 ingots weighed 2,203,954 pounds, and that 14,436 ingots weighed 1,277,730 pounds. From such weights, was deducted the estimated average weight of 29 ingots reported not landed.

Counsel for the plaintiff contends that the average weight of 38,243 ingots, the quantity weighed by the public weigher and by witness Turk, which represented 97 per centum of the importation, is a more acceptable average from which to figure the imported weight than the average weight accepted by the Government of 200 ingots out of the shipment.

The Government, on the other hand, contends that the plaintiff has failed to prove a more accurate weight than that used by the Government; and that the customs inspector acted in accordance with standard procedure in weighing such articles of uniform weight. The Government further contends that the percentage of lead content in the 105-ingot lot differed from that of the involved ingots; that the plaintiff's weights were taken from commingled ingots long after the merchandise left customs custody; and, finally, that there is no conclusive proof submitted identifying the merchandise.

The customs inspector weighing the ingots found a difference of 2 pounds between the two lots of 100 ingots which he weighed. He also weighed two single ingots from each invoice, which went to the public stores, finding one weighed 88 pounds, a little less than the average weight he reported, but the other weighed only 79 pounds. The difference between these two ingots was nearly 9 pounds, and both were below the average he reported as the weight from which the totals should be calculated. This discrepancy should have put him on notice that the packages were not uniform in weight, irrespective of the size and weight. The witness admitted that to facilitate and expedite such cargo that it was expedient to use test weights in determining the dutiable weight. However that may be, if the importer is dissatisfied with such a method, he is privileged to establish the actual weight of the shipment. This we believe has

been done, if not entirely, at least to such an extent that the uniform dutiable weight may be determined.

If we were to accept the evidence in its entirety, including Fisher's testimony with corroborative evidence, we would have the actual weight of the total shipment, including the actual weight of 105 ingots appearing on entry 759607, against a test weight of the Government of the ingots covered by entry 759608, here at issue, based upon the actual weight of only 200 ingots. Such weight was found by plaintiff's witnesses to be 3,405,911 pounds, but as 105 ingots, which are agreed to weigh 9,290 pounds, are not at issue in this case, the total weight of the imported ingots here involved is 3,396,621 pounds. However, the court ruled out the document corroborative of Fisher's testimony from which he refreshed his recollection. All we have then are the reports of the actual weighing of 38,243 ingots at a total of 3,305,768 pounds. If from that amount, 105 ingots, weighing 9,290 pounds, are deducted, we have a total here involved of 38,138 ingots weighing 3,296,478 pounds out of a shipment of 3,396,621 pounds. From such weight of 38,138 ingots, the average weight of 1 ingot would be 86.435 pounds. As the average weight of 105 ingots, stipulated to weigh 9,290 pounds, is 88.47 pounds per ingot, it is slightly to the Government's advantage not to deduct any portion of such ingots in obtaining the average weight of the ingots at issue herein which were fully established by the plaintiff to have been weighed. Such average weight of 38,243 ingots, proven to have been actually weighed out of 39,403 ingots imported, as covered by the two entries, is 86.44 pounds.

The evidence that there is no loss in weight of the ingots over any period of time was not contradicted; therefore, it is immaterial that the ingots in question were not weighed until a little more than 30 days after importation. As the question here involved is the weight of the imported merchandise, it is also immaterial whether or not the percentage of lead in the 105 ingots was 99.7 per centum rather than 99.8 per centum. The court is further of the opinion that the evidence fully identifies the merchandise as the identical merchandise imported aboard the S. S. *Executor*.

In the case of *Pacific Vegetable Oil Corp.* v. *United States*, 10 Cust. Ct. 371, Abstract 47900, the Government representative weighed 1 bag out of each 100 of sesame seed, from which the total weight was estimated. It was established at the trial that the bags were not uniform in weight, and weights of a public weighmaster were accepted as representative of the imported quantity. The court there pointed out that the evidence of the Government also showed that there were variations between the weights of the bags and held that the Government weigher proceeded contrary to the regulations in not requiring the entire shipment to be weighed.

In the case of *Clinch Mercantile Co.* v. *United States*, 10 Cust. Ct. 374, Abstract 47918, the weight of certain steel bars was determined by selecting and weighing 8 or 9 packages out of 283 and applying the average weight thereof to the total number of bundles. The entire lot of bars was established by plaintiff to have been weighed at one time. The court held that the estimated weights obtained by the weigher were not as accurate as the weight obtained from weighing the entire shipment.

For the reasons stated, we find that a weighing of 97 per centum of the shipment by the importer is conducive of producing a more accurate average of weight per ingot than the method followed by the Government weigher; and that an average of 86.44 pounds per ingot would more nearly approximate the correct weight, when applied to the entire shipment. We, therefore, find that 39,302 ingots of lead, at an average weight of 86.44 pounds each, amount to 3,397,264.88 pounds. Judgment will, therefore, be entered in favor of the plaintiff directing the collector to reliquidate the entry and assess the appropriate duty upon the lead bars in question upon the basis of 3,397,264.88 pounds and refund all duties taken in excess.